**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, | Civil Action No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| PALM BEACH TRANSPORTATION GROUP, LLC, PALM BEACH METRO TRANSPORTATION, LLC, JACKSONVILLE TRANSPORTATION GROUP, LLC, JACKSONVILLE METRO TRANSPORTATION, LLC, CAM-JO, INC., TRAN-STAR EXECUTIVE TRANSPORTATION SERVICES OF FLORIDA, INC. d/b/a TRAN-STAR, LLC, YELLOW CAB SERVICE CORPORATION of FLORIDA,INC., and CULLAN MEATHE, an individual, | |
| Defendants. | |

Plaintiff CONTINENTAL CASUALTY COMPANY, by way of Complaint against Defendants PALM BEACH TRANSPORTATION GROUP, LLC, PALM BEACH METRO TRANSPORTATION, LLC, JACKSONVILLE TRANSPORTATION GROUP, LLC, JACKSONVILLE METRO TRANSPORTATION, LLC, CAM-JO, INC., TRAN-STAR EXECUTIVE TRANSPORTATION SERVICES OF FLORIDA, INC. d/b/a TRAN-STAR, LLC, YELLOW CAB SERVICE CORPORATION of FLORIDA, INC., and CULLAN MEATHE, an individual, says:

## <u>JURISDICTIONAL ALLEGATIONS</u>

1.      Plaintiff Continental Insurance Company ("Plaintiff") is an insurance carrier organized under the laws of the State of Illinois with a principal place of business at 333 South Wabash Avenue, Chicago, Illinois.  Plaintiff Continental is authorized to transact business in the State of Florida.

2.      Defendant Palm Beach Transportation Group, LLC ("Palm Beach") is a limited liability company organized under the laws of the State of Florida with a principal place of business at 1700 N. Florida Mango Road, West Palm Beach, Florida, and a mailing address of 1635 Meathe Drive, West Palm Beach, Florida.

3.      Defendant Palm Beach Metro Transportation, LLC ("Palm Beach Metro") is a limited liability company organized under the laws of the State of Florida with a principal place of business at 1700 N. Florida Mango Road, West Palm Beach, Florida, and a mailing address of 1635 Meathe Drive, West Palm Beach, Florida.

4.      Defendant Jacksonville Transportation Group, LLC ("Jacksonville") is a limited liability company organized under the laws of the State of Florida with a principal place of business of 5320 Springfield Blvd., Jacksonville, Florida, and a mailing address of 1635 Meathe Drive, West Palm Beach, Florida.

5.      Defendant Jacksonville Metro Transportation, LLC ("Jacksonville Metro") is a limited liability company organized under the laws of the State of Florida with a principal place of business of 5320 Springfield Blvd., Jacksonville, Florida, and a mailing address of 1635 Meathe Drive, West Palm Beach, Florida.

6.      Defendant Cam-Jo, Inc. ("Cam-Jo") is a corporation organized under the laws of the State of Florida with a principal place of business and a mailing address of 1635 Meathe Drive, West Palm Beach, Florida.

7.      Defendant Tran-Star Executive Transportation Services of Florida, Inc. d/b/a Tran-Star, LLC ("Tran-Star") is a corporation organized under the laws of the State of Florida with a principal place of business of 16991 US 19 North, Clearwater, Florida and a mailing address of 1635 Meathe Drive, West Palm Beach, Florida.

8.      Defendant Yellow Cab Service Corporation of Florida, Inc. ("Yellow Cab"), is a corporation organized under the laws of the State of Florida with a principal place of business and mailing address of 1635 Meathe Drive, West Palm Beach, Florida.

9.      Upon information and belief, Yellow Cab is the parent corporation of Palm Beach, Palm Beach Metro, Jacksonville, Jacksonville Metro, Cam-Jo and Tran-Star, and liable for their debts.  Defendant Yellow Cabs, Palm Beach, Palm Beach Metro, Jacksonville, Jacksonville Metro, Cam-Jo and Tran-Star are hereinafter collectively referred to as the "Defendant Insureds".

10.     Cullan Meathe ("Defendant Meathe") is an individual residing at 1635 Meathe Drive, West Palm Beach, Florida.

11.     Upon information and belief, and for all times relevant to this action, Defendant Meathe is the registered agent for each of the Defendant Insureds at all times relevant to this action.

12.     Upon information and belief, and for all times relevant to this action, Defendant Meathe has been the owner, chief operating officer and director of each of the Defendant Insureds at all times relevant to this action.

13.     Upon information and belief, and for all times relevant to this action, Defendant Meathe was charged with all of the duties and responsibilities of an owner, chief operating officer and director of each of the Defendant Insureds under the laws of the State of Florida.  This includes, but is not limited to, exclusive authority to make decisions on behalf of the Defendant Insureds.

14.     The amount in controversy between the parties is in excess of $75,000.

15.     Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

## COUNT ONE
### (Breach of Contract Against Defendant Palm Beach)

16.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

17.     Plaintiff issued policies of commercial business automobile insurance to Defendant Palm Beach as follows:  (a) Policy No. BUA 2050456428 for the effective dates of November 3, 2004 to January 1, 2005; and (b) Policy No. BUA 2050456493 for the effective dates of January 1, 2005 to January 1, 2006.  Policy No. BUA 2050456493 was cancelled for nonpayment of premiums on or about December 5, 2005.  These policies of insurance are hereinafter referred to as the "Palm Beach Policies."

18.     The Palm Beach Policies are insurance contracts which provided insurance coverage for certain automobile liabilities of Defendant Palm Beach as set forth in the Palm Beach Policies in exchange for payment of premiums.

19.     Pursuant to the terms of the Palm Beach Policies, each policy's initial premiums were based on information submitted by Defendant Palm Beach and/or its insurance broker regarding Defendant Palm Beach's estimated automobile exposure for the effective dates of coverage.

20.     The initial premiums for the Palm Beach Policies were paid to Plaintiff.  The identity of the actual payor(s) remains under investigation.

21.     Since initial premiums are based on estimated information, the Palm Beach Policies are subject to audits based on actual automobile exposure for the actual effective dates of coverage.  The audits can result in additional or return premiums.

22.     The audits of the Palm Beach Policies produced additional premiums of $140,798 owed by Defendant Palm Beach to Plaintiff.  Plaintiff issued an invoice for these additional premiums with the audit calculations to Defendant Palm Beach and/or its insurance broker in a timely fashion.

23.     Defendant Palm Beach has failed, refused and continues to refuse to remit payment of $140,798 owed to Plaintiff pursuant to the terms of the Palm Beach Policies.

24.     Plaintiff has met all of its obligations, contractual and otherwise, required by the Palm Beach Policies.

25.     Plaintiff demanded payment of the amounts owed by Defendant Palm Beach to Plaintiff on numerous occasions prior to filing the instant litigation.

26.     Plaintiff has attempted to collect the amounts due and owing by Defendant Palm Beach to Plaintiff without success.

27.     Defendant Palm Beach has breached the insurance contracts between the parties by its failure to remit payment of premiums.

28.     Defendant Palm Beach has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff thereby resulting in damages to Plaintiff in the amount of $140,798 plus attorney's fees, expenses and court costs.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Palm Beach in the amount of $140,798 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT TWO
### (Unjust Enrichment Against Defendant Palm Beach)

29.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

30.     Plaintiff has provided insurance coverage and related services to Defendant Palm Beach for which Defendant Palm Beach has refused to pay and has been unjustly enriched thereby.

31.     Plaintiff demanded payment of the amounts owed by Defendant Palm Beach to Plaintiff on numerous occasions prior to filing the instant litigation.

32.     Plaintiff has attempted to collect the amounts due and owing by Defendant Palm Beach to Plaintiff without success.

33.     Defendant Palm Beach has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff for the insurance coverage and related services provided by Plaintiff, thereby resulting in damages to Plaintiff in the amount of $140,798 plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Palm Beach in the amount of $140,798 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT THREE
### (Account Stated Against Defendant Palm Beach)

34.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

35.     Defendant Palm Beach being indebted to Plaintiff in the sum of $140,798 upon an account stated between them, promised to pay Plaintiff said sum upon demand.

36.     Plaintiff demanded payment of the amounts owed by Defendant Palm Beach to Plaintiff on numerous occasions prior to filing the instant litigation.

37.     Plaintiff has attempted to collect the amounts due and owing by Defendant Palm Beach to Plaintiff without success.

38.     Defendant Palm Beach has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff for the insurance coverage and related services provided by Plaintiff, thereby resulting in damages to Plaintiff in the amount of $140,798 plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Palm Beach in the amount of $140,798 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT FOUR
### (Breach of Contract Against Defendant Palm Beach Metro)

39.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

40.     Plaintiff issued policies of commercial business automobile insurance to Defendant Palm Beach Metro as follows:   (a) Policy No. BUA 2050456431 for the effective dates of November 3, 2004 to January 1, 2005; and (b) Policy No. BUA 2050456509 for the effective dates of January 1, 2005 to January 1, 2006.  Policy No. BUA 2050456509 was cancelled for nonpayment of premiums on or about December 5, 2005.  These policies of insurance are hereinafter referred to as the "Palm Beach Metro Policies."

41.     The Palm Beach Metro Policies are insurance contracts which provided insurance coverage for certain automobile liabilities of Defendant Palm Beach Metro as set forth in the Palm Beach Metro Policies in exchange for payment of premiums.

42.     Pursuant to the terms of the Palm Beach Metro Policies, each policy's initial premiums were based on information submitted by Defendant Palm Beach Metro and/or its insurance broker regarding Defendant Palm Beach Metro's estimated automobile exposure for the effective dates of coverage.

43.     The initial premiums for the Palm Beach Metro Policies were paid to Plaintiff.  The identity of the actual payor(s) remains under investigation.

44.     Since initial premiums are based on estimated information, the Palm Beach Metro Policies are subject to audits based on actual automobile exposure for the actual effective dates of coverage.  The audits can result in additional or return premiums.

45.     The audits of the Palm Beach Metro Policies produced additional premiums of $98,150 owed by Defendant Palm Beach Metro to Plaintiff.  Plaintiff issued an invoice for these additional premiums with the audit calculations to Defendant Palm Beach Metro and/or its insurance broker in a timely fashion.

46.     Defendant Palm Beach Metro has failed, refused and continues to refuse to remit payment of $98,150 owed to Plaintiff pursuant to the terms of the Palm Beach Metro Policies.

47.     Plaintiff has met all of its obligations, contractual and otherwise, required by the Palm Beach Metro Policies.

48.     Plaintiff demanded payment of the amounts owed by Defendant Palm Beach Metro to Plaintiff on numerous occasions prior to filing the instant litigation.

49.     Plaintiff has attempted to collect the amounts due and owing by Defendant Palm Beach Metro to Plaintiff without success.

50.     Defendant Palm Beach Metro has breached the insurance contracts between the parties by its failure to remit payment of premiums.

51.     Defendant Palm Beach Metro has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff thereby resulting in damages to Plaintiff in the amount of $98,150 plus attorney's fees, expenses and court costs.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Palm Beach Metro in the amount of $98,150 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT FIVE
### (Unjust Enrichment Against Defendant Palm Beach Metro)

52.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

53.     Plaintiff has provided insurance coverage and related services to Defendant Palm Beach Metro for which Defendant Palm Beach Metro has refused to pay and has been unjustly enriched thereby.

54.     Plaintiff demanded payment of the amounts owed by Defendant Palm Beach Metro to Plaintiff on numerous occasions prior to filing the instant litigation.

55.     Plaintiff has attempted to collect the amounts due and owing by Defendant Palm Beach Metro to Plaintiff without success.

56.     Defendant Palm Beach Metro has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff for the insurance coverage and related services provided by Plaintiff, thereby resulting in damages to Plaintiff in the amount of $98,150 plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Palm Beach Metro in the amount of $98,150 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.


## COUNT SIX
### (Account Stated Against Defendant Palm Beach Metro)

57.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

58.     Defendant Palm Beach Metro being indebted to Plaintiff in the sum of $98,150 upon an account stated between them, promised to pay Plaintiff said sum upon demand.

59.     Plaintiff demanded payment of the amounts owed by Defendant Palm Beach Metro to Plaintiff on numerous occasions prior to filing the instant litigation.

60.     Plaintiff has attempted to collect the amounts due and owing by Defendant Palm Beach Metro to Plaintiff without success.

61.     Defendant Palm Beach Metro has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff for the insurance coverage and related services provided by Plaintiff, thereby resulting in damages to Plaintiff in the amount of $98,150 plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Palm Beach Metro in the amount of $98,150 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

### COUNT SEVEN
### (Breach of Contract Against Defendant Jacksonville)

62.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

63.     Plaintiff issued policies of commercial business automobile insurance to Defendant Jacksonville as follows: (a) Policy No. BUA 2050456414 for the effective dates of November 3, 2004 to January 1, 2005; and (b) Policy No. BUA 2050456476 for the effective dates of January 1, 2005 to January 1, 2006.  Policy No. BUA 2050456476 was cancelled for nonpayment of premiums on or about December 5, 2005.   These policies of insurance are hereinafter referred to as the "Jacksonville Policies."

64.     The Jacksonville Policies are insurance contracts which provided insurance coverage for certain automobile liabilities of Defendant Jacksonville as set forth in the Jacksonville Policies in exchange for payment of premiums.

65.     Pursuant to the terms of the Jacksonville Policies, each policy's initial premiums were based on information submitted by Defendant Jacksonville and/or its insurance broker regarding Defendant Jacksonville's estimated automobile exposure for the effective dates of coverage.

66.     The initial premiums for the Jacksonville Policies were paid to Plaintiff.  The identity of the actual payor(s) remains under investigation.

67.     Since initial premiums are based on estimated information, the Jacksonville Policies are subject to audits based on actual automobile exposure for the actual effective dates of coverage.  The audits can result in additional or return premiums.

68.     The audits of the Jacksonville Policies produced additional premiums of $120,842 owed by Defendant Jacksonville to Plaintiff.  Plaintiff issued an invoice for these additional premiums with the audit calculations to Defendant Jacksonville and/or its insurance broker in a timely fashion.

69.     Defendant Jacksonville has failed, refused and continues to refuse to remit payment of $120,842 owed to Plaintiff pursuant to the terms of the Jacksonville Policies.

70.     Plaintiff has met all of its obligations, contractual and otherwise, required by the Jacksonville Policies.

71.     Plaintiff demanded payment of the amounts owed by Defendant Jacksonville to Plaintiff on numerous occasions prior to filing the instant litigation.

72.     Plaintiff has attempted to collect the amounts due and owing by Defendant Jacksonville to Plaintiff without success.

73.     Defendant Jacksonville has breached the insurance contracts between the parties by its failure to remit payment of premiums.

74.     Defendant Jacksonville has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff thereby resulting in damages to Plaintiff in the amount of $120,842 plus attorney's fees, expenses and court costs.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Jacksonville in the amount of $120,842 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT EIGHT
### (Unjust Enrichment Against Defendant Jacksonville)

75.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

76.     Plaintiff has provided insurance coverage and related services to Defendant Jacksonville for which Defendant Jacksonville has refused to pay and has been unjustly enriched thereby.

77.     Plaintiff demanded payment of the amounts owed by Defendant Jacksonville to Plaintiff on numerous occasions prior to filing the instant litigation.

78.     Plaintiff has attempted to collect the amounts due and owing by Defendant Jacksonville to Plaintiff without success.

79.     Defendant Jacksonville has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff for the insurance coverage and related services provided by Plaintiff, thereby resulting in damages to Plaintiff in the amount of $120,842 plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Jacksonville in the amount of $120,842 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT NINE
### (Account Stated Against Defendant Jacksonville)

80.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

81.     Defendant Jacksonville being indebted to Plaintiff in the sum of $120,842 upon an account stated between them, promised to pay Plaintiff said sum upon demand.

82.     Plaintiff demanded payment of the amounts owed by Defendant Jacksonville to Plaintiff on numerous occasions prior to filing the instant litigation.

83.     Plaintiff has attempted to collect the amounts due and owing by Defendant Jacksonville to Plaintiff without success.

84.     Defendant Jacksonville has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff for the insurance coverage and related services provided by Plaintiff, thereby resulting in damages to Plaintiff in the amount of $120,842 plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Jacksonville in the amount of $120,842 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT TEN
### (Breach of Contract Against Defendant Jacksonville Metro)

85.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

86.     Plaintiff issued policies of commercial business automobile insurance to Defendant Jacksonville Metro as follows: (a) Policy No. BUA 2050456445 for the effective dates of November 3, 2004 to January 1, 2005; and (b) Policy No. BUA 2050456512 for the effective dates of January 1, 2005 to January 1, 2006.  Policy No. BUA 2050456512 was cancelled for nonpayment of premiums on or about December 5, 2005.  These policies of insurance are hereinafter referred to as the "Jacksonville Metro Policies."

87.     The Jacksonville Metro Policies are insurance contracts which provided insurance coverage for certain automobile liabilities of Defendant Jacksonville Metro as set forth in the Jacksonville Metro Policies in exchange for payment of premiums.

88.     Pursuant to the terms of the Jacksonville Metro Policies, each policy's initial premiums were based on information submitted by Defendant Jacksonville Metro and/or its insurance broker regarding Defendant Jacksonville Metro's estimated automobile exposure for the effective dates of coverage.

89.     The initial premiums for the Jacksonville Metro Policies were paid to Plaintiff.  The identity of the actual payor(s) remains under investigation.

90.     Since initial premiums are based on estimated information, the Jacksonville Metro Policies are subject to audits based on actual automobile exposure for the actual effective dates of coverage.  The audits can result in additional or return premiums.

91.     The audits of the Jacksonville Metro Policies produced additional premiums of $29,461 owed by Defendant Jacksonville Metro to Plaintiff.  Plaintiff issued an invoice for these additional premiums with the audit calculations to Defendant Jacksonville Metro and/or its insurance broker in a timely fashion.

92.     Defendant Jacksonville Metro has failed, refused and continues to refuse to remit payment of $29,461 owed to Plaintiff pursuant to the terms of the Jacksonville Metro Policies.

93.     Plaintiff has met all of its obligations, contractual and otherwise, required by the Jacksonville Metro Policies.

94.     Plaintiff demanded payment of the amounts owed by Defendant Jacksonville Metro to Plaintiff on numerous occasions prior to filing the instant litigation.

95.     Plaintiff has attempted to collect the amounts due and owing by Defendant Jacksonville Metro to Plaintiff without success.

96.     Defendant Jacksonville Metro has breached the insurance contracts between the parties by its failure to remit payment of premiums.

97.     Defendant Jacksonville Metro has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff thereby resulting in damages to Plaintiff in the amount of $29,461 plus attorney's fees, expenses and court costs.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Jacksonville Metro in the amount of $29,461 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT ELEVEN
### (Unjust Enrichment Against Defendant Jacksonville Metro)

98.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

99.     Plaintiff has provided insurance coverage and related services to Defendant Jacksonville Metro for which Defendant Jacksonville has refused to pay and has been unjustly enriched thereby.

100.    Plaintiff demanded payment of the amounts owed by Defendant Jacksonville Metro to Plaintiff on numerous occasions prior to filing the instant litigation.

101.    Plaintiff has attempted to collect the amounts due and owing by Defendant Jacksonville Metro to Plaintiff without success.

102.    Defendant Jacksonville Metro has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff for the insurance coverage and related services provided by Plaintiff, thereby resulting in damages to Plaintiff in the amount of $29,461 plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Jacksonville Metro in the amount of $29,461 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT TWELVE
### (Account Stated Against Defendant Jacksonville Metro)

103.    Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

104.     Defendant Jacksonville Metro being indebted to Plaintiff in the sum of $29,461 upon an account stated between them, promised to pay Plaintiff said sum upon demand.

105.     Plaintiff demanded payment of the amounts owed by Defendant Jacksonville Metro to Plaintiff on numerous occasions prior to filing the instant litigation.

106.     Plaintiff has attempted to collect the amounts due and owing by Defendant Jacksonville Metro to Plaintiff without success.

107.     Defendant Jacksonville Metro has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff for the insurance coverage and related services provided by Plaintiff, thereby resulting in damages to Plaintiff in the amount of $29,461 plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Jacksonville Metro in the amount of $29,461 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

<u>**COUNT THIRTEEN**</u>
**(Breach of Contract Against Defendant Cam-Jo)**

108.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

109.     Plaintiff issued a policy of commercial business automobile insurance to Defendant Cam-Jo under Policy No. BUA 2050456459 for the effective dates of December 15, 2004 to January 1, 2006.  Policy No. BUA 2050456459 was cancelled for nonpayment of premiums on or about December 5, 2005.  This policy of insurance is hereinafter referred to as the "Cam-Jo Policy."

110. The Cam-Jo Policy is an insurance contract which provided insurance coverage for certain automobile liabilities of Defendant Cam-Jo as set forth in the Cam-Jo Policy in exchange for payment of premiums.

111. Pursuant to the terms of the Cam-Jo Policy, initial premiums were based on information submitted by Defendant Cam-Jo and/or its insurance broker regarding Defendant Cam-Jo's estimated automobile exposure for the effective dates of coverage.

112. The initial premiums for the Cam-Jo Policy were paid to Plaintiff. The identity of the actual payor(s) remains under investigation.

113. Since initial premiums are based on estimated information, the Cam-Jo Policy is subject to audit based on actual automobile exposure for the actual effective dates of coverage. The audit can result in additional or return premiums.

114. The audit of the Cam-Jo Policy produced additional premiums of $175,191 owed by Defendant Cam-Jo to Plaintiff. Plaintiff issued an invoice for these additional premiums with the audit calculations to Defendant Cam-Jo and/or its insurance broker in a timely fashion.

115. Defendant Cam-Jo has failed, refused and continues to refuse to remit payment of $175,191 owed to Plaintiff pursuant to the terms of the Cam-Jo Policy.

116. Plaintiff has met all of its obligations, contractual and otherwise, required by the Cam-Jo Policy.

117. Plaintiff demanded payment of the amounts owed by Defendant Cam-Jo to Plaintiff on numerous occasions prior to filing the instant litigation.

118. Plaintiff has attempted to collect the amounts due and owing by Defendant Cam-Jo to Plaintiff without success.

119.     Defendant Cam-Jo has breached the insurance contract between the parties by its failure to remit payment of premiums.

120.     Defendant Cam-Jo has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff thereby resulting in damages to Plaintiff in the amount of $175,191 plus attorney's fees, expenses and court costs.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Cam-Jo in the amount of $175,191 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT FOURTEEN
### (Unjust Enrichment Against Defendant Cam-Jo)

121.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

122.     Plaintiff has provided insurance coverage and related services to Defendant Cam-Jo for which Defendant Cam-Jo has refused to pay and has been unjustly enriched thereby.

123.     Plaintiff demanded payment of the amounts owed by Defendant Cam-Jo to Plaintiff on numerous occasions prior to filing the instant litigation.

124.     Plaintiff has attempted to collect the amounts due and owing by Defendant Cam-Jo to Plaintiff without success.

125.     Defendant Cam-Jo has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff for the insurance coverage and related services provided by Plaintiff, thereby resulting in damages to Plaintiff in the amount of $175,191 plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Cam-Jo in the amount of $175,191 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT FIFTEEN
### (Account Stated Against Defendant Cam-Jo)

126.    Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

127.    Defendant Cam-Jo being indebted to Plaintiff in the sum of $175,191 upon an account stated between them, promised to pay Plaintiff said sum upon demand.

128.    Plaintiff demanded payment of the amounts owed by Defendant Cam-Jo to Plaintiff on numerous occasions prior to filing the instant litigation.

129.    Plaintiff has attempted to collect the amounts due and owing by Defendant Cam-Jo to Plaintiff without success.

130.    Defendant Cam-Jo has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff for the insurance coverage and related services provided by Plaintiff, thereby resulting in damages to Plaintiff in the amount of $175,191 plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Cam-Jo in the amount of $175,191 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT SIXTEEN
### (Breach of Contract Against Defendant Tran-Star)

131.   Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

132.   Plaintiff issued a policy of commercial business automobile insurance to Defendant Tran-Star under Policy No. BUA 2050456462 for the effective dates of December 15, 2004 to January 1, 2006.  Policy No. BUA 2050456462 was cancelled for nonpayment of premiums on or about December 5, 2005.  This policy of insurance is hereinafter referred to as the "Tran-Star Policy."

133.   The Tran-Star Policy is an insurance contract which provided insurance coverage for certain automobile liabilities of Defendant Tran-Star as set forth in the Tran-Star Policy in exchange for payment of premiums.

134.   Pursuant to the terms of the Tran-Star Policy, initial premiums were based on information submitted by Defendant Tran-Star and/or its insurance broker regarding Defendant Tran-Star's estimated automobile exposure for the effective dates of coverage.

135.   The initial premiums for the Tran-Star Policy were paid to Plaintiff.  The identity of the actual payor(s) remains under investigation.

136.   Since initial premiums are based on estimated information, the Tran-Star Policy is subject to audit based on actual automobile exposure for the actual effective dates of coverage. The audit can result in additional or return premiums.

137.   The audit of the Tran-Star Policy produced additional premiums of $16,649 owed by Defendant Tran-Star to Plaintiff.  Plaintiff issued an invoice for these additional premiums with the audit calculations to Defendant Tran-Star and/or its insurance broker in a timely fashion.

138.    Defendant Tran-Star has failed, refused and continues to refuse to remit payment of $16,649 owed to Plaintiff pursuant to the terms of the Tran-Star Policy.

139.    Plaintiff has met all of its obligations, contractual and otherwise, required by the Tran-Star Policy.

140.    Plaintiff demanded payment of the amounts owed by Defendant Tran-Star to Plaintiff on numerous occasions prior to filing the instant litigation.

141.    Plaintiff has attempted to collect the amounts due and owing by Defendant Tran-Star to Plaintiff without success.

142.    Defendant Tran-Star has breached the insurance contract between the parties by its failure to remit payment of premiums.

143.    Defendant Tran-Star has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff thereby resulting in damages to Plaintiff in the amount of $16,649 plus attorney's fees, expenses and court costs.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Tran-Star in the amount of $16,649 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.


## COUNT SEVENTEEN
### (Unjust Enrichment Against Defendant Tran-Star)

144.    Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

145.    Plaintiff has provided insurance coverage and related services to Defendant Tran-Star for which Defendant Tran-Star has refused to pay and has been unjustly enriched thereby.

146.     Plaintiff demanded payment of the amounts owed by Defendant Tran-Star to Plaintiff on numerous occasions prior to filing the instant litigation.

147.     Plaintiff has attempted to collect the amounts due and owing by Defendant Tran-Star to Plaintiff without success.

148.     Defendant Tran-Star has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff for the insurance coverage and related services provided by Plaintiff, thereby resulting in damages to Plaintiff in the amount of $16,649 plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Tran-Star in the amount of $16,649 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.


## COUNT EIGHTEEN
### (Account Stated Against Defendant Tran-Star)

149.     Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15 of this Complaint as if fully set forth herein.

150.     Defendant Tran-Star being indebted to Plaintiff in the sum of $16,649 upon an account stated between them, promised to pay Plaintiff said sum upon demand.

151.     Plaintiff demanded payment of the amounts owed by Defendant Tran-Star to Plaintiff on numerous occasions prior to filing the instant litigation.

152.     Plaintiff has attempted to collect the amounts due and owing by Defendant Tran-Star to Plaintiff without success.

153.    Defendant Tran-Star has failed, refused and continues to refuse to pay the amounts due and owing Plaintiff for the insurance coverage and related services provided by Plaintiff, thereby resulting in damages to Plaintiff in the amount of $16,649 plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Tran-Star in the amount of $16,649 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT NINETEEN
### (Breach of Contract Against Defendant Insureds)

154.    Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 28, 39 through 51, 62 through 74, 85 through 97, 108 through 120, and 131 through 143 of this Complaint as if fully set forth herein.

155.    Upon information and belief, the operations of Defendant Insureds are interrelated and commingled such that the operations are a single or integrated enterprise.

156.    Upon information and belief, Defendant Insureds have common ownership, common management, and centralized control of labor relations.

157.    Defendant Insureds commingled funds and jointly arranged for a single reinsurance program in connection with the policies of insurance issued by Plaintiff to Defendant Insureds.

158.    As a single or integrated enterprise, Defendant Insureds are jointly liable for the combined debts of Defendant Insureds.

159.    Defendant Insureds have breached the insurance contracts between Plaintiff and Defendant Insureds by their failure to remit payment of premiums owed to Plaintiff.

160.    Defendant Insureds have failed, refused and continue to refuse to pay the balance of $581,091 due and owing to Plaintiff [$140,798 + $98,150 + $120,842 + $29,461 + $175,191 + $16,649].  This has resulted in damages to Plaintiff in the amount of $581,091, plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Insureds in the amount of $581,091 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT TWENTY
### (Unjust Enrichment Against Defendant Insureds)

161.    Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15, 29 through 33, 52 through 56, 75 through 79, 98 through 102, 121 through 125, 144 through 148, and 155 through 158 of this Complaint as if fully set forth herein.

162.    Plaintiff has provided insurance coverage and related services to Defendant Insureds for which Defendant Insureds have refused to pay and have been unjustly enriched thereby.

163.    Plaintiff demanded payment of the amounts owed by Defendant Insureds to Plaintiff on numerous occasions prior to filing the instant litigation.

164.    Plaintiff has attempted to collect the amounts due and owing by Defendant Insureds to Plaintiff without success.

165.    Defendant Insureds have failed, refused and continue to refuse to pay the balance of $581,091 due and owing to Plaintiff, thereby resulting in damages to Plaintiff in the amount of $581,091, plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Insureds in the amount of $581,091 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT TWENTY-ONE
### (Account Stated Against Defendant Insureds)

166.    Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 15, 34 through 38, 57 through 61, 80 through 84, 103 through 107, 126 through 130, 149 through 153, and 155 through 158 of this Complaint as if fully set forth herein.

167.    Defendant Insureds being indebted to Plaintiff in the sum of $581,091 upon accounts stated between them, promised to pay Plaintiff said sum upon demand.

168.    Plaintiff demanded payment of the amounts owed by Defendant Insureds to Plaintiff on numerous occasions prior to filing the instant litigation.

169.    Plaintiff has attempted to collect the amounts due and owing by Defendant Insureds to Plaintiff without success.

170.    Defendant Insureds have failed, refused and continue to refuse to pay the balance of $581,091 due and owing to Plaintiff, thereby resulting in damages to Plaintiff in the amount of $581,091, plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Insureds in the amount of $581,091 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT TWENTY-TWO
### (Breach of Covenant of Good Faith and Fair Dealing Against Defendant Insureds)

171.    Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 28, 39 through 51, 62 through 74, 85 through 97, 108 through 120, 131 through 143, and 154 through 160 of this Complaint as if fully set forth herein.

172.    Every contract, including insurance contracts, has an implied duty of good faith and fair dealing.

173.    Defendant Insureds have breached their duty of good faith and fair dealing with respect to the contracts between the parties to this action by accepting and retaining insurance coverage with the intent to withhold and refuse payment for such insurance.

174.    As a direct and proximate result of the foregoing breaches, Plaintiff has suffered damages in the amount of $581,091, plus attorney's fees, expenses and court costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant Insureds in the amount of $581,091 for compensatory damages, together with attorney fees, costs of suit, interest and such further relief as this Court deems just and proper.

## COUNT TWENTY-THREE
### (Piercing the Corporate Veil Against Defendant Meathe)

175.    Plaintiff repeats, restates and realleges the allegations of Paragraphs 1 through 28, 39 through 51, 62 through 74, 85 through 97, 108 through 120, 131 through 143, and 154 through 160 of this Complaint as if fully set forth herein.

176.    Defendant Meathe is the sole owner and officer of Defendant Insureds.

177.    Upon information and belief, Defendant Insureds were and/or are mere instrumentalities, or alter-egos, of Defendant Meathe for the transaction of Defendant Meathe's own affairs.

178.    Upon information and belief, Defendant Insureds do not have any genuine or separate corporate existence but have been used and exist for the sole purpose of permitting Defendant Meathe to transact a portion of his business under a corporate guise.

179.    Upon information and belief, Defendant Meathe intentionally caused Defendant Insureds to withhold and refuse payment for the insurance coverage provided by Plaintiff for his own financial gain.

180.    Upon information and belief, Defendant Meathe acted with the intent to delay and defraud Plaintiff.

181.    Upon information and belief, Defendant Insureds and Defendant Meathe have abused the corporate form in an improper attempt to avoid the liabilities owed to Plaintiff.

182.    As a result of the foregoing, Plaintiff is entitled to pierce the corporate veil.

183.    Recognition of separate identities would promote injustice and protect fraud.

184.    Defendant Meathe should be deemed responsible for all of Defendant Insureds' liabilities owed to Plaintiff.

185.    Defendant Meathe's wrongful conduct has proximately caused damages to Plaintiff in the amount of $581,091, plus attorney's fees, expenses and court costs.

186.    Plaintiff is further entitled to recover punitive damages from Defendant Meathe because his conduct was willful, wanton and evidences entire want of care as would raise a presumption of conscious indifference as to the consequences.

**WHEREFORE**, Plaintiff demands judgment against Defendant Insureds in the amount of $581,091 for compensatory damages, together with attorney fees, costs of suit, interest, punitive damages and such further relief as this Court deems just and proper

**BRESSLER, AMERY & ROSS, P.C.**
Attorneys for Plaintiff
325 Columbia Turnpike
Florham Park, New Jersey  07932
(973) 514-1200 – Telephone
(973) 514-1660 – Facsimile
sthomas@bressler.com

August 26, 2010                              s/ Samuel J. Thomas
Date                                              By:     Samuel J. Thomas

**BRESSLER, AMERY & ROSS, P.C.**
Attorneys for Plaintiff
2801 SW 149th Avenue
Miramar, FL  33027
(954) 499-7979 – Telephone
(954) 499-7969 – Facsimile
kolin@bressler.com

August 26, 2010                              s/ Keith Olin
Date                                              By:     Keith Olin
                                                           FL Bar No. 334499